The cause was argued upon the exceptions, by Badger for complainants, and Gaston, contra; when Henderson, Judge, delivered his opinion as follows:
Without deciding on the right of the mortgagee to tack to the mortgage money other demands of a personal nature which he may have against the mortgagor, and if he can as against the mortgagor, whether such right is ex *261 tended against an assignee tor value, of the equity of redemption, and whether a purchaser of the equity of redemption at a sheriff's sale is such an assignee, I am very clearly of opinion that the mortgagor Moore has, in this case, the right of tacking the money paid to the Ha-miltons; because I think it was an incumbrance, and a lien on the land, and which prudence dictated to him to remove to give efficacy to the mortgage.
I give no opinion whether the purchase money after title is made forms such lien,' but I think it clearly does where title is not made, unless it appears that such lien was not relied on or abandoned; as if by the agreement title was to be made at a period before the purchase money became due. In this case it appears from the evidence that Casso. the mortgagor, had contracted with Mford for the purchase of the lot, which he afterwards mortgaged to Moore; that he gave his bonds for the purchase money, with John G. Blount as security, but did not receive title to the land; that these bonds were transferred by Mford to the Hamiltons. Casso could not compel Mford to make title until these bonds were paid off. Moore, therefore, by paying off these bonds, destroyed this equitable lien and enabled Casso to call for the legal title. It was done for Casso’s benefit, it thereby enabled Casso to fulfil his warranty to Moore. This exception must therefore be overruled.
I think the clerk erred in not allowing interest from the date of the deed, notwithstanding the deed calls for only the nett sum at the end of three years, for the parties treated the contract as a conditional sale, and'the rents were to come in lieu of interest; but the parties in 1814, and this Court now, considers it only as asecurity for money. Moore should, therefore, haye interest on his money then due.
Although, under ordinary circumstances, the assignee of the mortgagee should stand in his place, and must submit to arcdemptionupon the same terms; and though, *262 in general, it be true that it is no defence for him to say, that the payments or other deductions claimed by the mortgagor do not appear upon the papers, becáuse it is enough that it appears that it was redeemable, and it was his own act to purchase, and he might have informed himself, for the assignment only substitutes him to the mortgagee; yet there are cases where the sum really paid by the assignee shall be paid before a redemption shall be allowed, even when the mortgagor has been entirely passive; when be has lent his aid to swell the amount, there is no doubt but that such will be the case. Such cases arc when the mortgagor is, an infant, or perhaps a feme covert, and is about to be turned out of possession, or to suffer injury, and one as a friend, and in order to preserve the mortgagor’s rights and save him from injury, bonajidc, advances money; and in this case, but for the assignee’s taking an absolute deed to himself, and in his answer denying the right of the heirs to redeem, I think this would have been such a case; the more especially as he paid several hundred dollars less than the respectable gentleman who drew the mortgage deed reported to be due, after having examined the case as the friend of, and at the request of the widow; but his taking an absolute deed and denying the right of redemption, shows too strongly that he was not acting on the part of or in behalf of the heirs of the mortgagor, but for his own benefit; he must therefore stand upon the rights of the mortgagee. I should have mentioned above, in addition to the circumstances there stated, that Casso had left his wife and children without affording them means of redemption, or any other place of residence, and I regret very much that I am compelled to view the assignee as acting for his own benefit, and not for that of the heirs; but I am not satisfied how the report of the master differs so much from the gentleman who settled the account in '1814. Justice requires, I think, that we should be informed, if possible, of the items of that settlement; I think the case should be referred to the master to ascertain them.
*263 I think that the master erred in fixing.the value of the improvements: the evidence warrants no farther than glSOO at most. If the master went on the grounds that the improvements yield annually such á sum as, according to common calculations, requires an expenditure of S2500 to be made, he overlooks the ground rent, which belongs to the mortgagor. As to the assignee standing (in ordinary cases) in the place of the mortgagee, I think that the rule is as laid down by Lord Eosslyn, and approved of by Lord Eldon, he can claim no greater rights; and that the rule laid down by Lord Kenyon is fallacious, for although he has the law on his side by obtaining the legal title from the mortgagee, he has not equal equity; he is not a purchaser without notice; for his title being for the security of money, he is thereby put upon inquiry as to the sum due; and that which puts a person on inquiry is sufficient notice. '
There is another and a very important point, which I 'wish to have brought before the Court; it is alleged in the answer and supported by proofs; and that is, whether Lucas did not become, upon his purchase, a trustee for the heirs of Casso? I wish that question to be reserved and spoken to.
The other judges concurred in the opinion of Judge Henderson, and it was decreed that the lot be sold by the master, reserving the cause for farther consideration of the points on which his honor Judge Henderson expressed a wish for farther examination.